United States District Court
Southern District of Texas
**ENTERED**
March 18, 2024
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| Lynwood Moreau, et al., | § | |
| *Plaintiffs,* | § | |
| v. | § | Civil Action 4:19-CV-646 |
| | § | |
| Harris County, Texas, | § | |
| *Defendant.* | § | |

## MEMORANDUM AND ORDER

This is a case under the Fair Labor Standards Act, 29 U.S.C. § 207(a) (FLSA).[1] Plaintiffs are lieutenants and captains employed by the Harris County Sheriff's Office (HCSO). Plaintiffs seek relief against Defendant Harris County for its failure to pay them overtime compensation, in violation of the FLSA. ECF No. 1. Consistent with the parties' consent, the district judge transferred this case to the undersigned to conduct all further proceedings, including final judgment in accordance with 28 U.S.C. § 636(c). ECF No. 148. Pending before the court is Defendant's motion for summary judgment. ECF No. 159.[2] Defendant contends that lieutenants are exempt administrative employees and that captains are exempt administrative and executive employees, and consequently, that neither are entitled to overtime compensation under the FLSA.

---

[1] The FLSA provides that no employer shall employ any employee for a workweek longer than forty hours "unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

[2] Plaintiffs filed a response, ECF No. 163, and Defendant filed a reply, ECF No. 164.

Plaintiffs fall into three categories: (1) law enforcement patrol; (2) law enforcement investigation; and (3) criminal justice. Plaintiffs also fall into two ranks: captains and lieutenants. The court finds that there are genuine issues of material fact as to whether lieutenants in the law enforcement patrol and investigative categories are exempt administrative employees. Those employees' overtime claims will proceed to trial. However, there is no genuine issue of material fact as to whether the criminal justice lieutenants and all captains are exempt administrative employees. They are. There are also no genuine issues of material fact as to Plaintiffs' underreported hours claims or willfulness, and summary judgment will be granted on those claims. In sum, summary judgment will be granted as to all captains, the criminal justice lieutenants, underreported hours, and willfulness. The law enforcement lieutenants (both in patrol and investigations) may proceed to trial.

## I.   BACKGROUND

### A.   Factual Background.

HCSO utilizes a paramilitary chain of command: deputies report to sergeants, who report to lieutenants, who report to captains, who report to majors, who report to assistant chiefs, who report to the chief deputy, who ultimately reports to the sheriff. *See* Chief Thomas Diaz Decl. ¶¶ 2–5, ECF No. 159-11; HCSO Org. Chart, ECF No. 163-13. HCSO is divided into two commands: (1) Law Enforcement Command, which includes the Criminal Investigations Bureau and the Patrol Bureau; and (2) Criminal Justice Command, which includes the 701 Justice Housing

Bureau, the 1200 Housing Bureau, and the Justice Management Bureau. *See* HCSO Org. Chart, ECF No. 163-13. Each command is led by an assistant chief. *See id.* Each bureau is led by a major. *See id.* Each bureau is divided into different divisions or districts, which are led by captains. *See id.* The lieutenants function as the "watch commander" for a given shift within a district. ECF No. 159-11 ¶ 4.

### B.   Procedural History

Defendant has twice before moved for summary judgment. On June 10, 2019, Defendant moved for summary judgment, arguing that Lieutenant Moreau was an exempt executive employee. ECF No. 22. Judge Hughes, to whom this case was previously assigned, denied the motion without prejudice and permitted Defendant to file another summary judgment motion. ECF No. 50. On August 13, 2021, Defendant filed a second motion for summary judgment, again arguing that Lieutenant Moreau was an exempt executive employee. ECF No. 54. Judge Hughes denied that motion, finding that Moreau was a salaried employee, but that there were genuine issues of material fact remaining as to his primary duty, whether his direction of other employees constituted a law enforcement duty, and whether he had the ability to hire or fire employees. ECF No. 64. Judge Hughes explained that "[b]ased on the limited discovery at this point, it is clear Moreau performed a mix of managerial and law enforcement duties," and "[n]either party present[ed] sufficient evidence to conclude how Moreau splits his time." *Id.* at 4.

When the first two motions for summary judgment were filed, Moreau was the only plaintiff in this case. Thereafter, numerous other plaintiffs, of different ranks and in different commands and bureaus, joined in the case. ECF Nos. 66–114. After transfer to the undersigned, the court ordered that the parties conduct discovery. ECF Nos. 146, 153. The court held a status conference, at which the court advised that it would entertain further dispositive motions before trial. ECF Nos. 154, 158. Thereafter, Defendant filed the instant motion for summary judgment. ECF No. 159.

### C.   Defendant's Motion for Summary Judgment

Defendant raises five arguments. First, Defendant contends that, as required by the FLSA's administrative and executive exemptions, both lieutenants and captains are paid on a salary basis. ECF No. 159 at 19–20. Second, Defendant contends that all lieutenants are exempt administrative employees. *Id.* at 24–33. Third, Defendant argues that all captains are exempt administrative or executive employees. *Id.* at 33–35. Fourth, Defendant asserts that "Plaintiffs have no evidence that [Defendant] knew or should have known that some of [Plaintiffs] were allegedly working off-the-clock," and that such "underreported time is not compensable under the FLSA." *Id.* at 35. Finally, Defendant argues that "Plaintiffs have no evidence that [Defendant] willfully violated the FLSA." *Id.* at 37–38.[3]

---

[3] In support of its motion, Defendant attaches as evidence: (1) excerpts from Captain Paul Croas's deposition, ECF No. 159-2; (2) excerpts from Lieutenant Lynwood Moreau's deposition, ECF No. 159-3; (3) excerpts from Captain Chris Ecke's deposition, ECF No. 159-4; (4) excerpts from Lieutenant Charles Bryan's deposition, ECF No. 159-5; (5) excerpts from Chief Diaz's deposition, ECF No. 159-6; (6) excerpts from Lieutenant Kimberly Lee's

### D.   Plaintiffs' Response

Plaintiffs respond with nine arguments, attacking both the merits and the procedural posture of Defendant's motion. ECF No. 163. First, Plaintiffs argue that the court should deny Defendant's motion because the better course is to proceed to trial. ECF No. 163 at 35–38. Second, Plaintiffs contend that Defendant's motion should be denied because Defendant "waived its affirmative defenses that [Plaintiffs] are exempt . . . under the executive exemption and/or the administrative exemption by failing to plead them." *Id.* at 39–40. Third and fourth, Plaintiffs contend that Defendant's motion should be denied "because Judge Hughes's prior order denying summary judgment on the exact same issues is the law of the case" and is "preclusive." *Id.* at 40–44. Fifth, Plaintiffs urge the court to construe Defendant's motion as a motion for reconsideration. *Id.* at 44. Sixth, Plaintiffs contend that Defendant cannot establish that Plaintiffs were paid on a salary basis. *Id.* at 46–55. Seventh, Plaintiffs argue that Defendant has not established the applicability of the administrative or executive exemptions as a matter of law. ECF *Id.* at 55–62. Eighth and ninth, Plaintiffs urge the court to defer

---

deposition, ECF No. 159-7; (7) excerpts from Lieutenant Eric Templeton's deposition, ECF No. 159-8; (8) excerpts from Chief Phillip Bosquez's deposition, ECF No. 159-9; (9) excerpts from Human Resources Representative Veronica Weinberger's deposition, ECF No. 159-10; (10) Chief Diaz's Declaration, ECF No. 159-11; (11) Weinberger's Declaration, ECF No. 159-12; (12) a copy of HCSO's Department Policy regarding "Rank Structure of Sheriff's Office Personnel," ECF No. 159-13; (13) a copy of HCSO's Patrol Standard Operating Procedures for Patrol Bureau Lieutenants, ECF No. 159-14; (14) a copy of the "2017 Substantive Changes to Harris County Personnel Policies [and] Procedures," ECF No. 159-15; (15) a copy of the 2022 Harris County Personnel Policies and Procedures, ECF No. 159-16; and (16) a copy of Lieutenant Moreau's signed "Determination of Wage/Hour Law Exemption" form, ECF No. 159-17.

the issue of willfulness, and if considered, find that there are genuine issues of material fact as to whether Defendant willfully violated the FLSA. *Id.* at 62–63.[4]

The court begins with the procedural arguments.

## II.   The court will determine the merits of Defendant's motion pursuant to Rule 56(c).

Plaintiffs raise five procedural challenges to Defendant's motion for summary judgment. Each lacks merit.

### A.   Trial is not a better course.

Plaintiffs first argue that the court should deny Defendant's motion because, even if Defendant meets their summary judgment burden, trial is a better path forward. ECF No. 163 at 35. Plaintiffs argue that "the dispositive-motion process in this case is tainted with procedural unfairness," because this is Defendant's third motion for summary judgment and because the application of the FLSA's exemptions are a question for the jury even if an employee's primary duties are undisputed. *Id.* at 37. Defendant responds that Plaintiffs have failed to establish procedural unfairness rising to the level that would warrant denial of their

---

[4] In support of their response, Plaintiffs attached as evidence: (1) Lieutenant Edward Lopez's Declaration, ECF No. 163-1; (2) Captain Jeffrey Stauber's Declaration, ECF No. 163-2; (3) Captain Anthony McConnell's Declaration, ECF No. 163-3; (4) excerpts from Lieutenant Bryan's deposition, ECF No. 163-4; (5) excerpts from Captain Croas's deposition, ECF No. 163-5; (6) excerpts from Captain Ecke's deposition, ECF No. 163-6; (7) excerpts from Lieutenant Lee's deposition, ECF No. 163-7; (8) excerpts from Lieutenant Moreau's deposition, ECF No. 163-8; (9) excerpts from Lieutenant Templeton's deposition, ECF No. 163-9; (10) excerpts from Chief Bosquez's deposition, ECF No. 163-10; (11) excerpts from Chief Diaz's deposition, ECF No. 163-11; (12) excerpts from Weinberger's deposition, ECF No. 163-12; (13) a copy of HCSO's organizational chart as of January 29, 2019, ECF No. 163-13; (14) a copy of the definitions included in the Defendant's 2019 Personnel Policies and Procedures, ECF No. 163-14; (15) an excerpt from the Payroll Procedures and Compensation section of Defendant's 2017 Personnel Policies and Procedures, ECF No. 163-15; and (16) an excerpt from the Payroll Procedures and Compensation section of Defendant's 2019 Personnel Policies and Procedures, ECF No. 163-16.

motion. ECF No. 164 at 18–19. Defendant also contends that Plaintiffs are mistaken—when the facts are undisputed, the determination of whether an employer qualifies for an exemption is a question of law, not fact. *Id.* at 18.

The first two motions for summary judgment were filed when Moreau was the only plaintiff in the case and before discovery pertaining to all issues had been conducted. Although this is the third motion for summary judgment, Defendant moves for summary judgment on exemptions that have not been previously considered by the court. Moreover, prior to the filing of the instant motion, the court informed the parties that it would entertain a successive motion for summary judgment, ECF No. 154 at 26,[5] and adopted the dispositive motions deadline jointly proposed by the parties, ECF Nos. 156, 158. Although Plaintiffs objected to the re-urging of any issue previously raised by Defendant, ECF Nos. 152, 156, the court did not include any such limitation in setting the motions deadline. ECF No. 158. Plaintiffs have not put forth any compelling reason for the court to now deny the motion based on alleged procedural unfairness.

Additionally, the court finds that the issues raised by Defendant are appropriate for summary judgment. *See Singer v. City of Waco, Tex.*, 324 F.3d 813, 818 (5th Cir. 2003) ("It is true that the ultimate determination of whether an employer qualifies for an exemption under the FLSA is a question of law. That ultimate determination, however, relies on many factual

---

[5] Plaintiffs did not object to successive motions for summary judgment at this hearing, and, in fact, suggested that they also may have been interested in filing a dispositive motion. ECF No. 154 at 19.

determinations. . . .") (citing *Lott v. Howard Wilson Chrysler–Plymouth, Inc.,* 203 F.3d 326, 331 (5th Cir. 2000); *Smith v. City of Jackson, Miss.,* 954 F.2d 296, 298 (5th Cir. 1992)).[6]

### B.   Defendant did not waive its affirmative defenses.

Plaintiffs next argue that Defendant waived its exemption defenses because it did not identify the specific exemption(s) it relies upon in its answer. ECF No. 163 at 39–40. Defendant responds that Plaintiffs do not support this argument with any controlling authority and that controlling authority holds to the contrary. ECF No. 164 at 4 (quoting *Rogers v. McDorman,* 521 F.3d 381, 386 (5th Cir. 2008), as stating that a defendant may plead an affirmative defense at a pragmatically sufficient time if the plaintiff is not prejudiced).

"Even a technical failure to comply precisely with the pleading requirements of Rule 8(c) may be excused if 'the affirmative defense is raised in the trial court in a manner that does not result in unfair surprise.'" *Jordan v. Helix Energy Sols. Group, Inc.,* 346 F. Supp. 3d 890, 900 (S.D. Tex. 2018) (quoting *Rogers,* 521 F.3d at 385). "At the heart of Rule 8(c) is the concern that a 'defendant should not be permitted to 'lie behind a log' and ambush a plaintiff with an unexpected defense.'" *Id.* (quoting

---

[6] The court does not find that *Dewan v. M-I, L.L.C.,* 858 F.3d 331, 334 (5th Cir. 2017), stands for Plaintiffs' broad proposition that "[e]ven if the Court accepts Harris County's fiction that the facts are undisputed, summary judgment is still inappropriate because a jury gets to decide whether those facts qualify Moreau and the other plaintiffs for the § 13(a)(1) exemptions." Even in *Dewan,* the Fifth Circuit "unpack[ed] the legal question we must answer—namely, do the plaintiffs fall within the FLSA's administrative exemption" and ultimately found summary judgment inappropriate because there were genuine issues of material fact. *Dewan,* 858 F.3d at 334.

*Rogers*, 521 F.3d at 385). "A defendant does not waive a defense if it was raised at a 'pragmatically sufficient time' and did not prejudice the plaintiff in its ability to respond." *Id.* (quoting *LSREF2 Baron, L.L.C. v. Tauch*, 751 F.3d 394, 398 (5th Cir. 2014) (quoting *Rogers*, 521 F.3d at 386)). "Unfair surprise and prejudice are central concerns underlying the requirement that a defendant timely plead affirmative defenses." *Id.* (quoting *LSREF2 Baron, L.L.C.*, 751 F.3d at 402). "A district court has discretion to determine whether the party against whom the defense was raised suffered prejudice or unfair surprise as a result of the delay." *LSREF2 Baron, L.L.C.*, 751 F.3d at 398 (citing *Levy Gardens Partners 2007, L.P. v. Commonwealth Land Title Ins. Co.*, 706 F.3d 622, 633 (5th Cir. 2013)).

In its answer, Defendant pleaded as an affirmative defense, that "Plaintiff's claims are barred because the work he performed falls within exemptions, exclusions, exceptions, or credits provided for in the FLSA. This defense may also be applied to some or all of any members of a claimed putative class of alleged similarly situated persons." ECF No. 14 ¶ 37. Defendant did not specifically plead that lieutenants are exempt administrative employees and captains are exempt administrative and/or executive employees. *See* ECF No. 14. Plaintiffs have not been surprised or otherwise prejudiced by this. Plaintiffs do not and likely cannot contend that they were surprised by the instant motion for summary judgment based on the executive and administrative employee exemptions

to the FLSA's overtime requirements. *See* ECF No. 163 at 39–40.[7] Defendant has detailed these two affirmative defenses several times prior to filing the current motion for summary judgment. *See* ECF Nos. 22; 54; 157. Defendant identified its reliance on both exemptions now under consideration in an interrogatory answer served on April 14, 2023. ECF No. 164-1. Plaintiffs do not contend that they were deprived of the opportunity to conduct discovery on the exemptions. The court does not find that Defendant waived its exemption defenses.

### C. Judge Hughes's prior order does not prevent the court from considering Defendant's motion under Rule 56(c).

Plaintiffs contend that Judge Hughes's prior order denying Defendant's second summary judgment motion on their § 213(a)(1) defense is "law of the case" and, therefore, the court must find that there are fact issues precluding summary judgment on Defendant's § 213(a)(1) defense. ECF No. 163 at 42. Plaintiffs also argue that issue preclusion requires Defendant's motion to be denied because Defendant "has been given multiple opportunities to make its best case in support of summary judgment," which have been denied after the judiciary expended "significant resources." *Id.* at 43. Finally, Plaintiffs assert that the court should construe Defendant's motion as a motion for reconsideration because the motion "involves the exact same issues raised in its

---

[7] Instead, Plaintiffs argue that it is not fair for Defendant to be permitted to move forward on these exemption defenses because "Moreau and the other plaintiffs would not be permitted to belatedly assert an unpled claim that would now be barred by limitations even if the parties had substantive dialogues about it during the course of the case (for example, in briefing or during the discovery process) before limitations had run." ECF No. 163 at 40.

first and second motions for summary judgment,"[8] and therefore, because Defendant did not address Rules 59 or 60, the court should deny Defendant's motion. *Id.* at 44.

"The law-of-the-case doctrine does not, however, set a trial court's prior rulings in stone, especially if revisiting those rulings will prevent error." *United States v. Palmer*, 122 F.3d 215, 220 (5th Cir. 1997) (citing *United States v. Horton,* 622 F.2d 144, 149 (5th Cir. 1980)). Relevant here, "in civil cases a district court is not precluded by the law-of-the-case doctrine from reconsidering previous rulings on interlocutory orders such as summary judgment motions, as those rulings are not immutable and lack res judicata effect." *Id.* (citing *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 185 (5th Cir.1990), *cert. denied,* 510 U.S. 859 (1993); *United States v. Horton,* 622 F.2d 144, 148 (5th Cir. 1980)). Accordingly, neither law of the case nor issue preclusion prevents the court from considering Defendant's motion. Moreover, the court will not consider Defendant's motion under Rules 59 or 60. *See Collett v. Weyerhaeuser Co.*, No. CV 19-11144, 2021 WL 5411330, at *2 (E.D. La. May 7, 2021), *aff'd* No. 21-30449, 2022 WL 2387352 (5th Cir. July 1, 2022) (trial court construed motion for reconsideration of prior summary judgment orders as renewed motion for summary judgment where the court invited the parties to revisit their motions for summary judgment in light of changes in the record evidence).

---

[8] A comparison of Judge Hughes's prior orders and the instant motion for summary judgment shows that some of the issues currently before the court were presented, but not decided. *See* ECF Nos. 22, 54, 159.

The court turns to the merits of Defendant's motion for summary judgment.

## III.   The Standard of Review on Summary Judgment

Summary judgment is appropriate when the movant has established that the pleadings, affidavits, and other evidence available to the court demonstrate that no genuine issue of material fact exists, and the movant is thus entitled to judgment as a matter of law. Fed. R. Evid. 56(c). "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Bennett v. Hartford Ins. Co. of Midwest*, 890 F.3d 597, 604 (5th Cir. 2018).  A fact is material "if and only if proof of its existence might affect the outcome of the case." *Roy v. City of Monroe*, 950 F.3d 245, 254 (5th Cir. 2020).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion[] and identifying those portions of [the record] which it believes demonstrate the absence of a genuine [dispute] of material fact." *MDK Sociedad De Responsabilidad Limitada v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)). In cases brought under the FLSA, "[t]he 'employer bears the burden of proving that employees are exempt.'" *Miller v. Travis Cnty., Tex.*, No. 1:16-CV-1196-RP, 2018 WL 1004860, at *4 (W.D. Tex. Feb. 21, 2018) (quoting *Dalheim v. KDFT–TV*, 918 F.2d 1220, 1224 (5th Cir. 1990)). "If a party moving for summary judgment 'bears the burden of proof at trial, then its burden of

production is greater.'" *Miller*, 2018 WL 1004860, at *4 (quoting Wright & Miller, 10A <u>Federal Practice and Procedure</u> § 2727.1 (4th ed. Apr. 2017 Update); citing *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264–65 (5th Cir. 1991) ("Where, as here, the *moving party* bears the burden of proof at trial, it must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'")). Therefore, "[t]o meet their summary judgment burden, then, Defendant[] must produce sufficient evidence to be entitled to judgment with respect to every bona fide executive factor," and every administrative exemption factor, "if the evidence were uncontroverted at trial." *Id.* (citing *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 360 (5th Cir. 2010) (explaining that because the party moving for summary judgment would have the burden of proof at trial, it "had the burden of producing evidence in support of its motion to establish that there existed no issue of material fact regarding" the defense).

When ruling on a motion for summary judgment, the court views all facts and inferences in the light most favorable to the nonmoving party and resolves all disputed facts in favor of the nonmoving party. *Rodriguez v. City of Laredo*, 459 F. Supp. 3d 809, 814 (S.D. Tex. 2020). The court "may not make credibility determinations or weigh the evidence" in ruling on a summary-judgment motion. *Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

"Summary judgment cannot be defeated through '[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic

argumentation.'" *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 788 (5th Cir. 2017) (quoting *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002)). Rather, it must demonstrate specific facts identifying a genuine issue to be tried to avoid summary judgment. FED. R. CIV. P. 56(e).

## IV. The FLSA and its Exemptions

"The FLSA requires overtime pay for employees who work more than 40 hours per week." *Miller*, 2018 WL 1004860, at *4 (citing 29 U.S.C. § 207(a)(1)). "The law provides for various exemptions from that baseline requirement." *Id.* Here, the relevant exemptions are the executive exemption and the administrative exemption. *See* 29 C.F.R. 541.100(a); 29 C.F.R. 541.200(a). "However, these exemptions do not apply to first responders, such as police officers and firefighters." *Escribano v. Travis Cnty., Tex.*, No. 1:15-CV-331-RP, 2016 WL 8856918, at *4 (W.D. Tex. Aug. 25, 2016) (citing 29 C.F.R. § 541.3(b)(1)–(4)).

"[T]he FLSA's list of exemptions must be given a 'fair reading, as opposed to the narrow interpretation previously espoused by this and other circuits.'" *Amaya v. NOYPI Movers, L.L.C.*, 741 F. App'x 203, 204–05, n.2 (5th Cir. 2018) (noting that although prior Fifth Circuit decisions cited an erroneous principle of FLSA construction, reliance on decisions that concerned the interpretation and application of FLSA-implementing regulations, and not the statute itself, remained unaffected by the Supreme Court's holding in *Encino Motorcars, LLC v. Navarro*, 138 S.Ct. 1134 (2018)) (quoting *Carley v. Crest Pumping Techs., L.L.C.*, 890

F.3d 575, 579 (5th Cir. 2018) (quoting *Encino Motorcars, LLC*, 138 S.Ct. at 1142).

### A.     The Administrative and Executive Exemptions

The overtime pay requirements do not apply to "any employee employed in a bona fide executive, administrative, or professional capacity. . . ." 29 U.S.C. § 213(a)(1). "The FLSA regulations define the term 'employee in a bona fide administrative capacity' as any employee: (1) Compensated on a salary or fee basis at a rate of not less than $455[9] per week . . . exclusive of board, lodging or other facilities; (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." *Benavides v. City of Austin*, No. A-11-CV-438-LY, 2012 WL 12882001, at *11 (W.D. Tex. Sept. 21, 2012), *report and recommendation adopted*, No. A-11-CV-438-LY, 2012 WL 12883127 (W.D. Tex. Oct. 15, 2012) (citing 29 C.F.R. 541.200(a)).

"The bona fide executive exemption applies to employees (1) paid at least $455[10] per week 'on a salary basis' (2) whose 'primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department

---

[9] On January 1, 2020, this amount was increased to $684. *See Escribano*, 947 F.3d at n.1 (citing Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 84 Fed. Reg. 51,230, 51,231 (Sept. 27, 2019)).

[10] On January 1, 2020, this amount was increased to $684. *See Escribano*, 947 F.3d at n.1 (citing Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 84 Fed. Reg. 51,230, 51,231 (Sept. 27, 2019)).

or subdivision thereof;' (3) who 'customarily and regularly' direct 'the work of two or more employees;' and (4) who have the 'authority to hire or fire other employees' or whose hiring and firing recommendations 'are given particular weight.'" *Miller*, 2018 WL 1004860, at *4 (citing 29 C.F.R. § 541.100(a)).

### B.   First Responder Regulation

"The regulations promulgated by the Department of Labor have clarified that the bona fide executive exemption does not apply to people including 'police officers, detectives, deputy sheriffs, state troopers, highway patrol officers, investigators, inspectors, . . . and similar employees' who 'perform such work as . . . preventing or detecting crimes' and 'conducting investigations or inspections for violations of law' or 'other similar work.'" *Miller*, 2018 WL 1004860, at *4 (quoting 29 C.F.R. § 541.3(b)(1)).

"These types of employees do not fall within the ambit of the bona fide executive exemption 'because their primary duty is not management of the enterprise in which the employee is employed . . . as required under § 541.100.'" *Miller*, 2018 WL 1004860, at *4 (quoting 29 C.F.R. § 541.3(b)(2)). "In other words, they do not meet the second factor of the four-part bona fide executive employee exemption." *Id.* "By way of example, the regulation states that a police officer 'whose primary duty is to investigate crimes . . . is not exempt . . . merely because' the officer 'also directs the work of other employees in the conduct of an investigation or fighting a fire.'" *Id.* (quoting 29 C.F.R. § 541.3(b)(2)). "This clarification of the bona fide executive exemption's application to certain types of employees has, somewhat misleadingly, been called the 'first

responder' regulation." *Id*. "It applies to a broad range of types of work, including paramedics and emergency medical technicians, but it also extends to activities such as law enforcement." *Id*. (quoting 29 C.F.R. § 541.3(b)(1)).

Similarly, "[s]uch employees do not qualify as exempt administrative employees because their primary duty is not the performance of work directly related to the management or general business operations of the employer or the employer's customers as required under § 541.200." 29 C.F.R. § 541.3(b)(3).

## V.   Plaintiffs were paid on a salary basis.

With respect to the salary requirement, the court addresses lieutenants and captains together. Defendant contends that this element is met because "[s]ince January 1, 2020, lieutenants and captains have been paid in excess of $684 per week and[] prior to January 1, 2020, lieutenants and captains were paid in excess of $455 per week." ECF No. 159 at 19.[11] Plaintiffs respond that "Moreau and the other plaintiffs were not paid by the prototypical salary described in 29 C.F.R. § 541.602(a)" because their pay was tied directly to the number of hours they worked. ECF No. 163 at 49. Plaintiffs explain that under Defendant's policy, they earned compensatory (comp) time at the rate of one hour of comp time for each hour worked over forty in a workweek. *Id*. at 49–50. Defendant could dock Plaintiffs' comp time for weeks when Plaintiffs worked less than forty hours and, if Plaintiffs did not have sufficient comp time to cover their deficient hours, Defendant

---

[11] Weinberger affirms, "Since, January 1, 2020, lieutenants and captains have been paid in excess of $684 per week and, prior to January 1, 2020, lieutenants and captains were paid in excess of $455 per week." Weinberger Decl. ¶ 7, ECF No. 159-12.

could dock their pay. *Id.* Defendant replies that this analysis is incorrect because courts look to the employer's actual practice of making improper deductions and not, as Plaintiffs contend, to what is hypothetically permitted under the employer's salary policy. ECF No. 159 at 20.

"The Department of Labor's 'salary basis' regulation says that: 'An employee will be considered to be paid on a 'salary basis' . . . if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.'" *Escribano*, 947 F.3d at 273 (quoting 29 C.F.R. § 541.602(a)). "[A]n exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked." *Id.* (quoting 29 C.F.R. § 541.602(a)(1)). The question here is whether Defendant's policy, which would allow Plaintiffs' salary to be reduced based on the number of hours worked, runs afoul of the exemption.

The Fifth Circuit has rejected Plaintiffs' argument that the existence of a policy that authorizes reductions in salary based on hours worked results in the loss of an exemption absent a showing that the plaintiff's salary was actually reduced pursuant to the policy. *See Escribano*, 947 F.3d at 274 ("Even if there were a policy authorizing such deductions, that would not be 'sufficient evidence by itself to cause the exemption to be lost if a manager has never

used that policy to make any actual deductions. . . .") (citing 69 Fed. Reg. at 22,181).

In this case, Defendant has noted that, although there is a county policy that would allow Defendant to dock pay, the record does not contain specific instances where Defendant actually docked Plaintiffs' or any other similarly-situated employee's pay. Plaintiffs respond with the following excerpt from Weinberger's deposition:

> Q: All right. Other than paid leave—well, let me ask you this: Is it the County's position that they cannot pay anyone who receives a paycheck from the County a full 40 hours when they work less than 40 hours?
>
> A: Unless they use some of their allowed paid time off.
>
> Q: All right. And assuming they don't—that means assuming that a County employee does not have paid time off; and I'm talking any County employee, from the County Judge to the Sheriff to the Chief Deputy. If they don't work a full 40 hours and they don't have paid time off, they're getting docked?
>
> A: Yes.
>
> Q: And you're confident about that?
>
> A: Yes. I mean, I'm not responsible for however people report their—their time. I mean, if they're not reporting it correctly, they are—you know, they are going against the policy, and they're lying on their—on their—on their pay documents. So that's the way the policy said it needs to be reported.

ECF No. 163 at 53 (citing ECF No. 163-12 at 66:6–25). This does not establish that Defendant has actually docked Plaintiffs' or a similarly situated employee's pay. At best, Weinberger

summarizes Defendant's pay policy and speaks of docking pay hypothetically, with no concrete or actual instances of when this has ever occurred. *See also* ECF No. 163-12 at 82:13–17, 84:6–85:3 (without naming any instance in which a lieutenant was docked, Weinberger stated that it was "very highly unlikely" this would happen given the abundance of various leave available to these employees, such as comp time, vacation, sick, FMLA, and time requested from the sick pool).

Furthermore, a public employer does not lose the exemption on the basis that the employer's pay policy requires the employee's pay to be reduced for absences of less than one work day when the employee does not use accrued leave, provided that the pay policy is "established pursuant to principles of public accountability," and otherwise meets the salary requirements. 29 C.F.R. § 541.701. This is known as the safe harbor provision for public employers. Defendant attached as an exhibit to the motion for summary judgment the employment policy at issue, which does allow for deductions from salary. ECF Nos. 159-15 at 11–14, 35–37, 48–62. 159-16 at 15–17, 41–45, 61–84. The policy explicitly states:

> Harris County is accountable to the taxpayers for spending public funds; therefore, our pay system is based on principles of public accountability that prohibit the government from paying employees unless they actually perform work or have Paid Leave available. Thus, even Exempt Employees are subject to deductions for partial-day absences.

ECF No. 159-16 at 44; *see also* ECF No. 159-15 at 36. That statement is connected directly to the pay policy under consideration here. This case is distinguishable from *Spradling v. City of Tulsa*, 95 F.3d 1492 (10th Cir. 1996), which Plaintiffs cite

for the proposition that Defendant's pay policy is not sufficiently supported by principles of public accountability. In *Spradling*, the City of Tulsa argued that its employees were paid from tax revenues, which the Oklahoma Constitution requires be "levied and collected 'for public purposes only.'" *Id.* at 1499. The Tenth Circuit found that the cited general constitutional provision had only a convoluted connection to the plaintiffs' salaries and was therefore insufficient to demonstrate that the City's pay system was based on any principle of public accountability. *Id.* Moreover, also in contrast to *Spradling*, as demonstrated by Weinberger's testimony quoted above, Harris County's pay policy is mandatory, not discretionary. Defendant's policy satisfies the public employer safe harbor provision.

The court concludes that there are no genuine issues of material fact and that Plaintiffs are paid on a salary basis. Because the analysis past this point differs as to each exemption, the court first addresses whether lieutenants fall under the administrative exemption and then whether captains fall under the administrative and/or executive exemption.

## VI.   There is a genuine issue of material fact as to whether law enforcement lieutenants are exempt administrative employees.

Defendant contends that lieutenants in the law enforcement and criminal justice commands are exempt administrative employees because their primary duty is the performance of office or non-manual work directly related to the management or general business operations of Defendant and that primary duty includes the exercise of discretion and independent judgment with respect

to matters of significance. Defendant divides its argument into the two lieutenant positions: (1) law enforcement lieutenants; and (2) criminal justice lieutenants. Plaintiffs respond that none of the duties identified by Defendant "relate to the running of any business," and instead, these are "quintessential law-enforcement duties, which are . . . nonexempt because they are wholly unrelated to management policies or general business operations." ECF No. 163 at 57 (cleaned up).

### A. To be exempt, a lieutenant's primary duty must be the performance of office or non-manual work directly related to the management or general business operations of HCSO.

To qualify for the administrative exemption, "an employee's primary duty must be the performance of work directly related to the management or general business operations of the employer." 29 C.F.R. § 541.201(a). "[P]rimary duty means the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a) (quotations omitted). Factors to consider when determining the primary duty of an employee include but are not limited to: (1) the relative importance of the exempt duties as compared with other types of duties; (2) the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and (3) the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee. 29 C.F.R. § 541.700(a). "The amount of time spent on a particular type of work can be instructive, so 'employees who spend more than 50 percent of their time performing exempt work will generally

satisfy the primary duty requirement,' but time alone 'is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work.'" *Miller*, 2018 WL 1004860, at *8 (citing 29 C.F.R. § 541.700(b)).

"Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations; government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities. Some of these activities may be performed by employees who also would qualify for another exemption." 29 C.F.R. § 541.201(b). Non-exempt first responder duties include "rescuing fire, crime, or accident victims," "performing surveillance," "preparing investigative reports," and other like activities that are normally performed by police officers, paramedics, firefighters, and similar personnel. 29 C.F.R. § 541.3(b)(1). "The employee must be personally engaged in frontline law enforcement to fall under the first responder regulation." *Miller*, 2018 WL 1004860, at *8.

1.   **There is a genuine issue of material fact as to whether law enforcement lieutenants are exempt.[12]**

Defendant argues that law enforcement lieutenants, which it categorizes as patrol and non-patrol,[13] are "likely doing one of three tasks: (1) engaging in the supervision of the personnel on his or her shift, (2) being present on scene for calls in which their presence is required, or (3) voluntarily responding to non-priority calls." ECF No. 159 at 26.

Relying on the HCSO Patrol Standard Operating Procedures and deposition excerpts from Lieutenant Moreau, Captain Ecke, and Lieutenant Bryan, Defendant states that these Plaintiffs' "primary responsibility . . . is supervising the watch or section to which he or she is assigned," or in other words, "to ensure that all of a shift's resources are used as efficiently and effectively as possible." *Id.* at 13. Defendant points to evidence that "[w]hen lieutenants are not on scene for a level one call or voluntarily

---

[12] The court does not find, as Plaintiffs argue, ECF No. 163 at 44–46, that the lieutenants or captains are categorically excluded from the administrative and executive exemptions. *See Benavides v. City of Austin*, No. A-11-CV-438-LY, 2013 WL 3197636, at *7–10 (W.D. Tex. June 20, 2013) (relying on Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed.Reg. 22,122, 22,130 (Apr. 23, 2004) and stating that "High-level police, fire, and emergency officials may still be exempt employees if their primary duty is not first-response work but rather managerial and administrative tasks."); *see also Maestas v. Day & Zimmerman, LLC*, 664 F.3d 822, 827 (10th Cir. 2012) ("Thus, high-level employees who perform some first responder duties, like police lieutenants or fire chiefs, can nonetheless be exempt executives if their primary duty is managerial and they meet the other elements of the test.").

[13] Based on excerpts from Chief Diaz and Lieutenant Bryan's depositions, Defendant argues that the primary distinction between patrol and non-patrol law enforcement lieutenants in this lawsuit is that patrol focuses on calls for service, whereas non-patrol is focused on investigations. ECF No. 159 at 15.

responding to other calls, they are engaged in administrative tasks such as:

> ensuring a shift is adequately staffed, ([ECF No. 159-3], Moreau 36:8-10), assigning deputies to various initiatives (*Id.*, Moreau 34:8-18; [ECF No. 159-4], Ecke 22:2-19), approving payroll ([ECF No. 159-3], Moreau 34:19-23), mentoring subordinates ([ECF No. 159-3], Moreau 39:24-40:3), resolving interpersonal disputes between subordinates (*Id.*, Moreau 40:4-7), monitoring sergeants and calls for service ([ECF No. 159-5], Bryan 10:3-15; 11:4-9), ensuring subordinates are informed of directives from the chain of command ([ECF No. 159-4], Ecke 16:6-11), monitoring deputy and sergeant compensatory time to ensure it is below 240 hours ([ECF No. 159-4], Ecke 18:12-16), managing the relationship with Home Owners Associations and/or Municipal Utility Districts who participated in the Harris County Law Enforcement Contract Program (*Id.*, Ecke 17:22-21:23).

*Id.* at 27 (footnote omitted). Defendant argues that the above is unequivocally administrative work and constitutes law enforcement lieutenants' primary duty.

Relying on deposition excerpts from Ecke, Moreau, and Bryan, Defendant specifies that when dispatched to a priority one call, lieutenants act as a "scene commander," which means that after being briefed, they provide subordinates with "input on additional tasks," supervise securing the scene, coordinate with other divisions, and decide whether to speak to the media and in what manner. *Id.* at 14. Defendant argues that a law enforcement lieutenant's work on scene at priority one calls is exempt administrative work, not a non-exempt first responder duty, because their tasks do not involve personal engagement in law enforcement. *Id.* at 29–30.

Finally, Defendant argues that although voluntarily responding to calls could be a first responder duty, it is not a primary duty for law enforcement lieutenants because, being voluntary, it is not a job requirement—rather, these lieutenants use their discretion to determine when to voluntarily respond to lower priority calls. *Id.* at 30.

In response, Plaintiffs point to evidence—Moreau's, Lopez's, Stauber's, and McConnell's declarations and excerpts from Moreau's, Bryan's, and Ecke's depositions—that while on shift, law enforcement lieutenants primarily respond to calls for service or wait for a call, and work crime scenes—they infrequently go into the office, and if they do, it is for an hour or less to email, review reports and case files, and speak with subordinates. ECF No. 163 at 22 (citing Moreau Decl. ¶¶ 20–21, ECF No. 24-1; Lopez Decl. ¶¶ 21–22, ECF No. 163-1; Stauber Decl. ¶¶ 15–20, ECF No. 163-2; McConnell Decl. ¶¶ 16–20, ECF No. 163-3; Bryan Dep. at 10:16-21, 11:16-22, 30:16-23, ECF No. 163-4; Ecke Dep. at 15:15-23, 38:24-39:4, 39:12-41:9, 42:20-24, ECF No. 163-6; Moreau Dep at 60:1-25, 63:19-23, 64:13-20, 66:4-23, 67:4-17, 71:8-15, ECF No. 163-8). Plaintiffs also provide evidence, namely excerpts from Moreau's, Ecke's, Bryan's, and Croas's depositions, disputing that law enforcement lieutenants are responsible for or engage in personnel assignments, scheduling, coordination with other HCSO divisions, managing resources, or training subordinates. *Id.* at 23–24 (citing Bryan Dep. at 17:15-20, 26:4-9, ECF No. 163-4; Croas Dep. at 14:14-23, 18:2-11, ECF No. 163-5; Ecke Dep. at 18:18-22, 20:16-21:6, 21:19-23, 27:14-17, 33:20-34:2, 34:7-16, ECF No. 163-6;

Moreau Dep. at 35:24-36:6; 42:1-11, 42:14-17, 44:1-8; 44:21-45:6,
ECF No. 163-8).

There is evidence that law enforcement lieutenants' duties
include both frontline law enforcement and administration.[14] Both
parties have identified fundamental factual disputes as to the
overall character of law enforcement lieutenants' positions and as
to several of the factors relevant to the primary duty analysis. *See*
29 C.F.R. § 541.700(a). Most notably, there is a genuine
disagreement as to whether these lieutenants even performed
certain of the purportedly exempt administrative tasks, much less
the amount of time spent on these tasks and the relative
importance of these tasks compared to lieutenants' duties on scene
at required and voluntary calls.[15] *See Miller*, 2018 WL 1004860, at
*10 (finding summary judgment improper where "there is a
genuine factual dispute with respect to whether Plaintiffs' exempt
management duties or their non-exempt first responder duties are
more important."); *see also Maestas*, 664 F.3d at 829–30 (finding

---

[14] An example of this is in HCSO's "Patrol Bureau Lieutenant" standard operating procedure.
*See* ECF No. 159-14.   HCSO lists as "duties," administrative tasks such as formulating
schedules, providing equipment to personnel, compiling administrative reports, and
reviewing personnel evaluations. ECF No. 159-13 at 3. But, also listed are frontline law
enforcement tasks, such as being "responsible for the initial patrol response to all critical
incidents, major crime scenes, and significant events"—HCSO delineates eight "mandatory"
instances and two additional instances where the lieutenant must consult the on-scene
supervisor to determine whether their presence is required. ECF No. 159-14 at 3–4. The SOP
does not indicate Defendant's expectation on the amount of time to be spent on each task or
the relative importance of each respective duty. *See* ECF No. 159-14.

[15] The court is unconvinced by Defendant's argument that answering lower priority calls is
not to be considered in determining a lieutenant's primary duty. Based on the record, the
court finds whether answering these calls were voluntary and not part of managing their
assigned watch to be a fact question. *See, e.g.,* Ecke Dep., at 40:2–4 ECF No. 163-6 ("[HCSO's]
expectations is to have the calls answered in a timely fashion. And if that means [a
lieutenant] [has] to answer a few, then [they] answer it.").

summary judgment improper for a lieutenant and police captain who performed a mix of administrative duties and first responder duties, but granting summary judgment against a police major who spent almost his entire day at headquarters supervising the shift).

The court accordingly finds that a genuine issue of material fact precludes finding as a matter of law that law enforcement lieutenants are either non-exempt first responders or that they are exempt administrative employees under the FLSA. Defendant has not proffered sufficient evidence for the court to conclude at this stage that a law enforcement lieutenant's primary duty is HCSO's administration. Accordingly, Defendant's Motion for Summary Judgment is **DENIED** as to the law enforcement lieutenants.

### 2.   Criminal Justice Lieutenants'[16] Primary Duty is Administrative.

"[I]f a correctional officer primarily detains and supervises suspected and convicted criminals, that officer will not be exempt, regardless of his or her rank and regardless of the fact that the officer may also supervise other employees." *Crawford v. Lexington-Fayette Urban Cnty. Gov't*, No. CIV.A. 06-299-JBC, 2008 WL 2598345, at *5 (E.D. Ky. June 25, 2008).

Citing to deposition excerpts of Lieutenants Templeton, Bryan, and Lee, Defendant argues that criminal justice lieutenants' primary duty "is ensuring that the sergeants, deputies, and civilian staff that report to them are doing their job correctly and efficiently." ECF No. 159 at 25 (citing Bryan Dep. at 16:23-17:8, ECF No. 159-5; Lee Dep. at 16:19-17:3, ECF No. 159-7;

---

[16] Criminal justice lieutenants work in the jails and the courts. ECF No. 159 at 31.

Templeton Dep. at 19:16-14, ECF No. 159-8). Defendant asserts that "[g]iven their limited interaction with detainees, there is no colorable argument that criminal justice lieutenants are first responders." *Id.* Defendant points to evidence that despite different divisions and assignments in the jails,[17] these lieutenants were primarily tasked with completing administrative tasks, such as ensuring staff do their job timely and correctly, ECF Nos. 159-5 at 16:23–17:8; 159-7 at 16:19–17:3; 159-8 at 19:6–14, and managing and administering oversight of the facility, ECF No. 163-8 at 81:18–24. Plaintiffs respond that the record shows that instead of running any business, these lieutenants were responsible for keeping the peace by making sure inmates were in their cells, searching inmates, and ensuring doors were locked, not managing subordinates or recordkeeping. ECF No. 163 at 22.

Although there is some testimony that these lieutenants sometimes performed floor duty tasks, such as searching and escorting detainees or inmates, none of the testimony proffered by Plaintiffs demonstrates that these tasks could plausibly be considered the primary duty of criminal justice lieutenants, such that they fall under the first responder regulation. One lieutenant failed to mention *any* inmate interaction in their duties, *see* ECF No. 163-7, and of those who did mention inmate interaction, they clarified that only 10% of their time was spent interacting with detainees or inmates, Templeton Dep. at 28:6–10, ECF No. 163-9

---

[17] Captain Croas served as a lieutenant in housing and operations before being promoted. ECF Nos. 159-2; 163-5. Lieutenant Moreau served as a shift lieutenant and a lieutenant in inmate processing. ECF Nos. 159-3; 163-8. Lieutenant Lee served in the records division of the jail. ECF Nos. 159-7; 163-7. Lieutenant Templeton served in the detainee classification and logistics division of the jail. ECF Nos. 159-8; 163-9.

(as a lieutenant in detainee classification, the percentage of his daily activities involving direct contact with the inmates was "not much. . . . say 10 percent, maybe."), that any inmate interaction was only "occasional," Moreau Dep. at 82:2–4, ECF No. 163-8 ("Q: But you weren't involved in actively supervising or moving the detainees. Were you? A: "Not often, but occasionally, yes."), or "very limited," Bosquez Dep. at 36:14–21, ECF No. 163-10 ("the lieutenants, would have a lot of the same type of interactions that I would. So one-on-one or daily interactions would be a lot more limited. That's really the front-line true, and then the sergeant, if an inmate has an issue, it would escalate to the sergeant. And very few of those should get past the sergeant to that administrative level of the lieutenant.").

Plaintiffs fail to cite any evidence contradictory to Defendant's position that criminal justice lieutenants' primary duty is administrative and managerial work. Moreau Dep., ECF No. 163-8 at 79:13–80:23 (his primary duty was looking for safety issues at the jail); Templeton Dep. at 27:1–28:10 ("not much" 10% of his time was direct contact with inmates), 46:19–49:5 (roughly 70% of his time spent in meetings, traveling to meeting, reviewing emails and paperwork), ECF No. 163-9; Croas Dep. at 26:15–18 (80% of the work performed as a jail operations lieutenant was administrative), ECF No. 163-5; Lee Dep. at 20:23–21:2 ("I oversee the division. I just make sure everything runs properly on a day-to-day basis. And, you know, the issues that come to me, I have to do a lot of research to make sure things are in compliance."), 163-7. Further, there is nothing in the evidence before the court

indicating that this limited or non-existent inmate interaction predominated in importance over these lieutenants' administrative duties. Addressing the relationship between their wages and their nonexempt subordinates' wages, lieutenants earn roughly 12.5% more than non-exempt sergeants and roughly 69% more than non-exempt deputies. *See* ECF No. 159 at 26 (citing HCSO's Salary Schedule, ECF No. 55-8). And finally, as discussed more fully below, the record shows that these lieutenants were almost entirely free from direct supervision.

Based on the facts in the summary judgment record, the court must conclude that there is no genuine issue of material fact that criminal justice lieutenants' primary duty is the administration of HCSO's jails. *Cf. Parrish v. Roosevelt Cnty. Bd. of Cnty. Commissioners*, No. CIV 15-0703 JB/GJF, 2017 WL 6759103, at *18–19 (D.N.M. Dec. 31, 2017).

> ### B.    A criminal justice lieutenant's primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

Defendant asserts that the "undisputed evidence establishes that lieutenants had significant discretion." ECF No. 159 at 32. Plaintiffs respond that Defendant has not fully addressed the third prong of the administrative exemption because, although Defendant alleges that Plaintiffs exercised discretion and independent judgment, Defendant has not tied that discretion and independent judgment to matters of significance. ECF No. 163 at 57. The court disagrees. *Cf.* ECF No. 159 at 32–33.

The exercise of independent judgment "implies that the employee has authority to make an independent choice, free from

immediate direction or supervision." 29 C.F.R. § 541.202(c). Based on the court's review of the record, there is no genuine issue of material fact as to this element. The criminal justice lieutenants' primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. In his deposition, Lieutenant Templeton stated that he "absolutely had a lot of discretion in the way [he] did [his] job and every role," including his management functions. ECF No. 159-8 at 39:8–21. Lieutenant Lee stated that she had a lot of discretion and autonomy in the way she does her job, and even stated that, when a new captain was assigned to her division, she guided him. ECF No. 163-7 at 17:8–10, 17:15–17, 18:8–10. Assistant Chief Diaz declared that "in performing their primary duty, lieutenants [in the Criminal Justice Command] have a substantial amount of discretion," and listed the following examples:

> Determining which deputies report to which sergeants; daily review of staffing numbers for the building on his or her shift; responding to concerns raised by or about detainees; determining how [to] respond to security concerns such as, fire alarms, infrastructure issues, and contraband; and actively ensuring that the Texas Commission on Jail Standards requirements are being met.

ECF No. 159-11 ¶ 7.

The record shows that lieutenants had discretion over their primary duty and that their primary duty was absolutely related to matters of significance, i.e., ensuring the jail was staffed and secure. *Cf. Parrish*, 2017 WL 6759103, at *19 (the employee exercised discretion and independent judgment where he was responding to subordinates' questions and concerns without

consulting a supervisor). Accordingly, the court finds, based on the record before it, that there is no genuine issue of material fact as to whether the criminal justice lieutenants qualify for the administrative exemption. Defendant's motion for summary judgment is **GRANTED** as to the criminal justice lieutenants.

## VII. Captains are exempt administrative employees.

Relying on Chief Diaz's Declaration, Defendant summarizes that "a captain's primary duty is to respond to and correct a wide variety of operational issues or concerns," and "[f]or most projects, such as personnel and resource allocation, building and vehicle maintenance, and coordinating with other law enforcement agencies, captains must exercise a significant amount of discretion and independent judgment." ECF No. 159 at 34 (citing ECF No. 159-11 ¶ 5).

### A. Captains' primary duty is the performance of office or non-manual work directly related to the management or general business operations of HCSO.

Defendant contends that the key distinctions between lieutenants and captains is that "captains are responsible for managing an entire division," instead a specific shift, and, "unlike law enforcement lieutenants, law enforcement captains are rarely required to respond to any active crime or investigation scenes." ECF No. 159 at 32–33. Citing to Chief Diaz's deposition testimony, Defendant asserts that captains are exempt administrative employees because they are "strategic planners responsible for a wide variety of high level initiatives, such as the summer crime initiative to determine how to address most violent areas of the county, planning HCSO presence for back to school, determining

long term plans of action, interfacing with the public, and coordinating with other law enforcement and first responders." ECF No. 159 at 32–33 (citing ECF No. 159-6 at 62:14–66:3).

Captain Croas testified that he would describe the work he does as administrative, namely because "a lot" of his job is in the office on the computer, and he also testified that he spends 80% of his time doing administrative work. ECF No. 159-2 at 19:11–20:4. Croas testified that he handles "hardships and transfer requests," where employees who are experiencing some difficulty in scheduling will ask his permission to either work overtime or have a day off. *Id.* at 13:21–14:6. He also testified that he goes to the jail floor to "make sure out rounds are being done," and "that the care and welfare of the inmates is actually happening instead of being told it is. There are inspections." *Id.* at 20:8–14. Croas clarified that, when he visits the jail floor, it is a "quality control duty" to continue making sure his subordinates are doing what they are telling him they are doing, not to interact with detainees. *Id.* at 20:8–21. Although Captain Croas testified that he sometimes is in the field, it is "if [HCSO] ha[s] injured employees," but his work is "not the same" as when he was on patrol. *Id.* at 19:17–24.

Captain Ecke testified that one way his position as a captain differs from his prior position as a lieutenant is that he is responsible for "the overall operation of the facility versus just one shift," and he is responsible for building maintenance. ECF No. 159-4 at 67:1–9, 72:4–11. Ecke also testified that "at least 50 percent" of his job was spent with administrative issues, and that if an incident occurs, he is expected "to show up." ECF No. 163-6

at 72:21–24, 73:9–12. Chief Diaz testified that in the law enforcement command, captains have the responsibility to decide whether to increase patrols or do stationary patrols as a response to data collected showing most violent areas, to decide to what schools deputies need to be deployed in response to back-to-school stressors, to engage with the public at community events, to develop relationships with other first responders and safety partners in the community. ECF No. 159-6 at 62:14–66:3. In his Declaration, Chief Diaz summarized a captain's duty as follows:

> Captains, like lieutenants, are managers. The key distinction between a lieutenant and a captain is the scope of their management authority. While lieutenants are responsible for managing the resources of a specific a shift, captains are responsible for managing an entire division. This requires them to respond to and correct a wide variety of operational issues or concerns. For most projects, such as personnel and resource allocation, building and vehicle maintenance, and coordinating with other law enforcement agencies, captains must exercise a significant amount of discretion and independent judgment. While captains may occasionally respond to active crime or investigation scene, HCSO expects captains to respond to scenes concerning officer involved shootings, multiple fatalities, or critical incidents, which are extremely infrequent.

ECF No. 159-11 ¶ 5.

Here, the record shows that captains' primary duty is the performance of office or non-manual work directly related to the management or general business operations of HCSO. The court finds that the above demonstrates that captains' administrative duties are far more important than any potential non-exempt duties they may have. There is little to no discussion by either side

of a captain's non-exempt first responder duties,[18] whereas the record shows that captains' daily administrative decisions impact entire divisions and their civilian and non-civilian employees. Moreover, the testimony in the record demonstrates that captains spend the majority of their time on administrative tasks. Captains are also generally free from direct supervision. Aside from policy changes and hiring or firing, captains did not need a superior's permission to act, and instead, the opposite is true. Chief Diaz noted several initiatives he specifically assigned to captains as the decisionmaker. ECF No. 159-6 at 62:14–66:3.[19]

Based on the record before the court, Defendant has sufficiently established that captains' primary duty is to manage

---

[18] This is largely undisputed by Plaintiffs who fail to separately address the captain position in their briefing. Plaintiffs do not tailor any portion of their argument specifically to captains, and instead appear to rely on the same arguments made regarding the administration exemption's application to lieutenants. ECF No. 163 at 55–58. Plaintiffs point to evidence that captains: (1) are not responsible for budgeting or procurement, ECF Nos. 163-6 at 67:10–22 (Ecke testified that he does not have any budgeting or procurement duties, but can review policies and take any issues to his major), 163-5 at 16:1–9 (Croas testified that he can submit recommendations for policy modifications, but that goes to HCSO's policy unit); and (2) do not make final hiring or firing decisions, ECF Nos. 163-6 at 70:5–71:20 (Ecke testified that he does not hire or fire, but "[a]s a captain, from what [he has] heard,. . . if there became an opening for . . . their own administrative assistant, that [the captain] conduct[s] an interview for . . . all the eligible candidates"), *id.* at 68:23-69:8, 78:5–12; 163-5 at 21:18-22:8 (out of "three or four" administrative assistants Croas only interviewed one—the one assistant who was not transferred from within the organization), 19:1–10 (Croas testified that he referees disputes between employees and if he cannot solve them, he refers them to human resources). Plaintiffs do not contest that captains decide transfer and hardship requests, conduct inspections, check subordinates' work, manage building maintenance, develop interdisciplinary relationships, and make decisions regarding increased patrols or police presence in schools and high crime areas. *Cf. Maestas v. Day & Zimmerman, LLC*, 972 F. Supp. 2d 1232, 1243 (D.N.M. 2013) ("Plaintiffs have not pointed to evidence that would support a finding that [captains] engage[d] in the same front-line activities as [their] subordinates on a daily basis.").

[19] Defendant does not compare the pay ranges between captains and other employees. But lack of evidence on this final factor does not suffice to overcome the first three factors. *See Emmons*, 982 F.3d at 256.

HCSO operations in the criminal justice and law enforcement commands. *See* 29 C.F.R. § 541.201(b). The court continues to the final element of the administrative exemption.

### B. Captains' primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

Citing to Chief Diaz's declaration, Defendant asserts that "[f]or must [sic] projects, such as personnel and resource allocation, building and vehicle maintenance, and coordinating with other law enforcement agencies, captains must exercise a significant amount of discretion and independent judgment." ECF No. 159 at 34 (citing ECF No. 159-11 ¶ 5). Plaintiffs again argue that Defendant failed to fully address the third prong. ECF No. 163 at 57. For similar reasons as those delineated above, the court disagrees.

Chief Diaz testified that in the law enforcement command, he has personally delegated to captains the responsibility to decide whether to increase patrols or do stationary patrols as a response to data collected showing most violent areas and to decide what schools to deploy deputies to in response to back-to-school stressors. ECF No. 159-6 at 62:14–66:3. The record shows that captains have discretion over their primary duty and that their primary duty was absolutely related to matters of significance, i.e., ensuring the jail was staffed and secure and making sure that patrols were adequately staffed in schools and highly violent areas. *See Parrish*, 2017 WL 6759103, at *20.

Accordingly, the court finds that based on the record before it, there is no genuine issue of material fact as to whether captains

qualify for the administrative exemption. Defendant's motion is granted as to all captains.[20]

## VIII. Defendant's summary judgment motion is granted as to underreported hours.

Defendant "moves for partial summary judgment as to any claim for alleged 'off-the-clock' work" because "[t]his allegedly underreported time is not compensable under the FLSA." ECF No. 159 at 35. Defendant argues that Plaintiffs cannot demonstrate that Defendant knew or should have known Plaintiffs were working overtime that was not reported on their timesheets because: the record demonstrates that Plaintiffs had the ability to review and correct inaccurate time records, but sometimes decided not to; there is no testimony that any of Plaintiffs were told to under-report their time or complained about underreporting time; and the structure of HCSO compensation incentivizes exempt employees to accurately record their time because employees are eligible to accrue compensatory time for any hour worked over forty hours, up to 240 hours. ECF No. 159 at 36. Plaintiffs did not respond to these arguments. *See* ECF No. 163.[21]

Under the FLSA, "[a]n employer who is armed with [knowledge that an employee is working overtime] cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim

---

[20] Because the court finds the administrative exemption to applies to the captain position, the court does not address Defendant's argument that captains are exempt executive employees.

[21] Given that Plaintiffs did not respond to this argument in Defendant's Motion for Summary Judgment, they have waived any opposition. *See Ellison v. Hudnall*, No. 4:21-CV-1806, 2023 WL 4188564, at *2 (S.D. Tex. June 26, 2023) (citing *Kitchen v. BASF*, 952 F.3d 247, 253 (5th Cir. 2020) (holding any claims not raised in response to a motion for summary judgment are waived)).

for the overtime compensation." *Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 964 (5th Cir. 2016) (citing *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005) (quoting *Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995))). "An employee, however, cannot prevail on an FLSA overtime claim if that 'employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work.'" *Id.* (citing *Harvill*, 433 F.3d at 441 (quoting *Newton*, 47 F.3d at 748); *Brumbelow v. Quality Mills, Inc.*, 462 F.2d 1324, 1327 (5th Cir. 1972)).

The court grants summary judgment insofar as Plaintiffs seek overtime compensation for hours they deliberately failed to report on their timesheets. *See Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d at 965; *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 876 (6th Cir. 2012) ("When the employee fails to follow reasonable time reporting procedures[,] she prevents the employer from knowing its obligation to compensate the employee and thwarts the employer's ability to comply with the FLSA.").

## IX. Defendant's summary judgment motion is granted as to willfulness.

Defendant contends that Plaintiffs cannot prove a willful violation of the FLSA because the decision to classify lieutenants and captains as exempt was made over twenty years ago; every employee promoted to an exempt position completes a "Determination of Wage/Hour Law Exemption" form on which the employee and a supervisor compare the position's duties to applicable FLSA exemptions; and Defendant has consulted with other law enforcement agencies to determine whether their

similarly situated employees are classified as exempt. ECF No. 159 at 37–38. Plaintiffs respond that the court should defer ruling on willfulness because it is prematurely decided on summary judgment. ECF No. 163 at 62–63. Alternatively, Plaintiffs argue that there are genuine issues of material fact because "there is evidence that [Defendant] failed to keep accurate records of all of the hours worked by Moreau and the other plaintiffs." *Id.* at 63.

"Although 'the FLSA generally provides for a two-year statute of limitations on actions to enforce its provisions,' Congress allows the limit to be extended to three years when the cause of action arises 'out of a willful violation.'" *Rosales v. Indus. Sales & Servs.*, LLC, No. 6:20-CV-00030, 2022 WL 4751171, at *11 (S.D. Tex. Sept. 30, 2022) (quoting *Reyes v. Tex. EZPAWN, L.P.*, 459 F. Supp. 2d 546, 565 (S.D. Tex. 2006) (citing 29 U.S.C. § 255(a))). "The burden 'of demonstrating willfulness' is on the Plaintiff, who must demonstrate that 'an employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."'" *Id.* (quoting *Steele*, 826 F.3d at 248 (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133–34 (1988))). "Willfulness 'refer[s] to conduct that is not merely negligent,' and the FLSA's plain language indicates that willful is to be defined by its 'common usage' and 'is considered synonymous with such words as "voluntary," "deliberate," and "intentional."'" *Id.* (quoting *McLaughlin*, 486 U.S. at 133). "Reckless disregard means the 'failure to make adequate inquiry into whether conduct is in compliance' with the FLSA." *Schulke v. Isbaz Corp.*, No. CV H-20-

2571, 2023 WL 5002452, at *5 (S.D. Tex. Aug. 4, 2023) (quoting
5 C.F.R. § 551.104).

"Factors that district courts rely upon in making this
willfulness determination include:

> (1) admissions that an employer knew its method of
> payment violated the FLSA prior to the accrual of the
> action, . . . (2) continuation of a pay practice without
> further investigation after being put on notice that the
> practice violated the FLSA, . . . (3) earlier violations of
> the FLSA that would put the employer on actual notice
> of the [r]equirements of the FLSA, . . . (4) failure to
> keep accurate or complete records of employment, and
> . . . (5) prior internal investigations which revealed
> similar violations.

*Rosales*, 2022 WL 4751171, at *11, *motion to certify appeal denied*,
No. 6:20-CV-00030, 2023 WL 2267230 (S.D. Tex. Feb. 28, 2023)
(citing *Solano v. Ali Baba Mediterranean Grill, Inc.*, No. 3:15-CV-
00555, 2016 WL 808815, at *5 (N.D. Tex. Mar. 2, 2016) (alteration
in original) (citations omitted); *Bingham v. Jefferson Cnty., Tex.*,
No. 1:11-CV-00048, 2013 WL 1312563, at *14 (E.D. Tex. Mar. 1,
2013)).

As an initial matter, the court declines Plaintiffs' request to
defer addressing willfulness until trial. "While courts have
declined to determine the issue of damages before a liability
finding is made, 'plaintiff[] cite[s] to no case law standing for the
proposition that, as a matter of law, the statute of limitations
cannot be decided before the issue of liability. Indeed, precedent
from this circuit indicates the exact opposite.'" *See Alvarez v. NES
Glob. LLC*, No. 4:20-CV-01933, 2023 WL 9111908, at *11 (S.D. Tex.
Dec. 29, 2023) (citing *Clay v. New Tech Glob. Ventures, LLC*, No.
CV 16-296-JWD-CBW, 2019 WL 1028532, at *6 (W.D. La. Mar. 4,

2019) (listing cases)). The court will address whether there is a genuine issue of material fact concerning the issue of willfulness.

Attached to its motion and cited in its argument, Defendant offered evidence to establish the absence of willfulness: (1) deposition testimony from Weinberger that the decision to classify lieutenants and captains as exempt was made over twenty years ago, ECF No. 159 at 37 (citing ECF No. 159-10 at 85:24–86:13); (2) a copy of the Determination of Wage/Hour Law Exemption form completed by promoted employees and their supervisors in which the two "compare the duties of the position to the applicable FLSA exemption," *id.* (citing ECF No. 159-22); and (3) deposition testimony from Weinberger in which she testified that Defendant "has contacted other agencies to determine whether other agencies are classifying similar supervisors as exempt," *id.* (citing ECF No. 159-10 at 33:22–34:22).

In response, Plaintiffs contend that there is a genuine issue of material fact as to willfulness because "there is evidence that [Defendant] failed to keep accurate records of all of the hours worked by Moreau and the other plaintiffs." ECF No. 163 at 63. In support, Plaintiffs cite to pages 15 and 16 of their response, two pages of their statement of facts. *Id.* at n. 37.

Plaintiffs cite one case: *Bingham v. Jefferson Cnty., Tex.*, No. 1:11-CV-48, 2013 WL 1312563, at *14 n.12 (E.D. Tex. Mar. 1, 2013), *report and recommendation adopted as modified*, No. 1:11-CV-48, 2013 WL 1312014 (E.D. Tex. Mar. 27, 2013). In *Bingham*, the court did not address the employer's recordkeeping practices. *Id.* at *17. The only discussion of this particular factor is in a

footnote to the court's recitation of the law. See id. at *14 n.12
("*E.g., Elwell v. Univ. Hosps. Home Care Servs.,* 276 F.3d 832, 844
(6th Cir. 2002) ("[A]n employer's recordkeeping practices may
nonetheless corroborate an employee's claims that the employer
acted willfully in failing to compensate for overtime. For example,
the fact that an employer knowingly under-reported its employee's
work hours could suggest to a jury that the employer was
attempting to conceal its failure to pay overtime from regulators[]
or was acting to eliminate evidence that might later be used
against it in a suit by one of its employees.") (internal citations
omitted)).

The court finds that Plaintiffs have not established a
genuine issue of material fact regarding whether Defendant acted
willfully. Here, Plaintiffs offered no evidence that Defendant
knowingly underreported Plaintiffs' work hours. Plaintiffs'
evidence shows that Plaintiffs reported their own hours and that
any hour worked over 40 hours constituted an hour of "comp time,"
up to 240 hours. ECF No. 163 at 15. If Plaintiffs worked less than
forty hours a week, then their comp time was docked, and if they
did not have sufficient comp time, their pay could be docked. *Id.* at
30.

Plaintiffs state that, "Moreau and the other plaintiffs did not
record all of the hours they worked because they were either told
not to or that they would not be paid for it." *Id.* at 30. But none of
the evidence supports the notion that Defendant instructed
Plaintiffs not to report their hours. Instead, *Plaintiffs* were
underreporting their hours allegedly because someone, who is not

named in Plaintiffs' evidence or response, told them to, or they did not see the utility in keeping track of their comp time in excess of 240 hours. This does not amount to Defendant's knowingly underreporting Plaintiffs' hours or acting to eliminate evidence that might be later used in an FLSA lawsuit. *See Elwell,* 276 F.3d at 844.

None of the evidence Plaintiffs cite demonstrates a genuine issue of material fact as to whether Defendant was aware of the FLSA's requirements and yet chose not to follow the law. Rather, as Defendant points out, it sought advice regarding FLSA compliance from other similarly situated law enforcement agencies—and in reliance on that information and advice, Defendant did not alter the exemption status of lieutenants and captains. *See* ECF No. 159-10 at 33:8–34:22.[22] Moreover, it conducted an individualized analysis of whether certain exemptions applied to each employee's promotions. *See id.* at 32:15–33:7;[23] 159-17.[24] There is no genuine issue of material fact concerning whether Defendant knowingly or recklessly disregarded FLSA compliance. Summary judgment is **GRANTED** as to willfulness.

---

[22] Weinberger, with Defendant's HR department, testified that she personally and other members of HR have surveyed other similarly sized and operated counties in Texas, like Bexar, Dallas, Travis, and even outside of Texas, like Chicago, Los Angeles, and Miami, to compare Defendant's classification of employees, salary bases, and job descriptions.

[23] Weinberger testified that "for some employees, when we see a new job classification, we—there's a form the County has that need to be filled out based on the responsibilities," and later clarified that the form is titled "Determination of Wage and Hour Law Exemption."

[24] Lieutenant Moreau's Determination of Wage/Hour Law Exemption consists of a checklist that details various factors of the "personal staff/policymaker," "executive employee," "professional employee," "computer employee," and "administrative employee" exemptions and was completed by Lieutenant Moreau and his supervisor on April 25, 2005.

## X.     Conclusion

The court **ORDERS** that Defendant's motion for summary judgment, ECF No. 159, be **GRANTED IN PART AND DENIED IN PART.** The court denies Defendant's motion on the law enforcement lieutenants' overtime claims. The court grants Defendant's motion on all captains' claims, the criminal justice lieutenants' claims, all willfulness claims, and all claims on underreported hours.

Signed at Houston, Texas, on March 17, 2024.

_____

Peter Bray
United States Magistrate Judge